```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOSEPH R. MUTINO,
                    Petitioner,
                                        MEMORANDUM AND ORDER
         -against-                      04-CR-0876(JS)

UNITED STATES OF AMERICA,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:    Melissa Madrigal, Esq.
                   Creizman L.L.C.
                   565 Fifth Avenue, 7th Floor
                   New York, New York 10017

For Respondent:    Robert W. Schumacher, II, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza
                   Central Islip, New York 11722
```

SEYBERT, District Judge:

Joseph R. Mutino ("Mutino" or "Petitioner") petitions this Court for a writ of error coram nobis seeking return of specific forfeited funds. (Coram Nobis Pet., D.E. 35.) For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

The Court assumes familiarity with the facts and procedural history, which are referenced as necessary to explain the Court's decision.

On May 24, 2000, the corporation Kahnawake-Mohawk Industries ("Mohawk") entered a guilty plea in the Eastern District

of New York.  (See Mohawk Plea Tr., D.E. 42-1,[1] at 17-37.)  Mohawk plead guilty to Count One of an Information, charging Mohawk with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). (See Mohawk Information, D.E. 42-1, at 12-15.)  The Information stated that Mohawk, "knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct financial transactions, affecting interstate commerce, to wit: Minority Business Enterprise ("MBE") contract award transactions to [Mohawk] in excess of $2,000,000, which transactions in fact involved the proceeds of specified unlawful activity, to wit: theft concerning programs receiving federal funds and mail fraud." (Mohawk Information at 12-13.)

The guilty plea was taken on behalf of the corporation by Francis Buscher, the president of Mohawk.  (Mohawk Plea Tr. 2:11-3:21.)  Mohawk, through Francis Buscher, stated that it qualified as an MBE and was therefore awarded various construction jobs.  When completing the projects, however, Mohawk would not use its actual personnel to complete the work as mandated by New York City's MBE requirements.  (Mohawk Plea Tr. 16:2-17:8.)  One of

---

[1] When citing to documents contained within Docket Entry 42-1, the Court will use the page numbers generated by the Electronic Case Filing System.

such construction projects was referred to as the Bayside Project.[2] (See Mohawk Information at 14.)

During the plea proceedings, the Government provided an offer of proof illustrating Mohawk's scheme:

> Your Honor, the government's proof would be that Mr. Buscher's company was approached by various general contractors over a period of time starting in approximately 1983, in which they offered to pay his company a percentage of the minority business contract in order to run the payroll for their employees and put in their general contractor's employees, or other individuals that they recommended on his contract in order for them to do the work under their supervision and control. And the only services that Mr. Buscher's company offered was to essentially be a payroll service and not meet the requirements of the New York State and federal regulations that he had to actually perform the work himself.

(Mohawk Plea Tr. 17:10-17:22.) During the guilty plea, the parameters of the forfeiture requirements were addressed; pertinent for purposes of this Coram Nobis Petition is that Mohawk agreed to forfeit $1,457,892.50, which represented "all the funds that [were] on deposit with the New York City Department of Design and Construction and their general contractor, which [was] JPM Contracting Corporation, [which] did perform concrete sidewalk work on [the] Bayside Project." (Mohawk Plea Tr. 11:24-12:7.) The requirements of the forfeiture were put in writing in the

---

[2] Throughout the documents cited to in this Order, the Bayside Project is at times referred to as project number HWQ-707.

Preliminary Order of Forfeiture. (See Mohawk Preliminary Order of Forfeiture, D.E. 42-1, at 39-42.)

Following the guilty plea, copies of the Preliminary Order of Forfeiture were served on the New York City Department of Design and Construction and on counsel for the JPM Contracting Corporation. (See D.E. 42-1 at 44.) In addition, notice of the Preliminary Order of Forfeiture was published in the New York Post Newspaper on September 25, October 2, and October 9, 2000. (See D.E. 42-1 at 45.)

After the plea hearing, on August 7, 2000, JPM petitioned to amend the Preliminary Order of Forfeiture, stating that JPM was the general contractor for the Bayside Project and that the Bayside Project was not completed at the time of the abovementioned forfeiture agreement, and thus, the agreed-upon forfeiture amount was not accurate. (See JPM Pet., D.E. 42-1, at 47-51.) JPM argued that Mohawk, as a subcontractor on the Bayside Project, was paid by JPM and not by the New York City Department of Design and Construction, and thus, JPM had already paid Mohawk amounts in excess of the forfeiture amount that JPM owed. (JPM Pet. at 48-49.) Further, JPM claimed that it should be provided funds that represent the difference between the amount deposited to the New York City Department of Design and Construction and the funds already provided to Mohawk. (JPM Pet. at 48.) In total, JPM claimed it had an interest in the abovementioned $1,457,892.50 and

4

requested it be provided $517,903.67. (JPM Pet. at 48-49.) Ultimately, a Second Order of Forfeiture was issued, and $206,712.00 was released from the New York City Department of Design and Construction to one of JPM's suppliers. (See Mohawk Second Order of Forfeiture, D.E. 42-1, at 53-56.)

On September 29, 2004, an Information was filed in the Eastern District of New York, charging Joseph Mutino, the president of JPM, with Conspiracy to Commit Fraud. (See Mutino Information, D.E. 3.) But before discussing Mutino's guilty plea and sentence, the Court will address the relevant prosecution of John Mikuszewski ("Mikuszewski"), a consultant for Rosewood Contracting Corporation ("Rosewood").

In a separate indictment, Mikuszewski faced multiple charges, including conspiracy to commit mail fraud against New York City for actions related to the abovementioned MBE program. (See Mikuszewski Indictment, D.E. 42-1, at 107-25.) Specifically, the Indictment stated that JPM was in a "silent" joint venture agreement with Rosewood, pursuant to which JPM would receive work contracts, including the Bayside Project, through the MBE program, but would use Rosewood to perform the work. (See Mikuszewski Indictment at 108-12.) Ultimately, Mikuszewski entered a guilty plea to a charge on the Superseding Indictment unrelated to the MBE-related conduct. Notable for purposes of this Coram Nobis Petition, on January 30, 2009, Rosewood filed a third-party

5

petition in the Mohawk forfeiture action asking for $645,000 of the funds forfeited to the New York City Department of Design and Construction to be returned to Rosewood. (See Rosewood Pet., D.E. 42-1, at 127-32.) Rosewood claimed that the funds forfeited to the New York City Department of Design and Construction included an amount rightly owed to JPM, and that due to the "silent" agreement between Rosewood and JPM, Rosewood was entitled to a portion of the funds earned through the Bayside Project. (See Rosewood Pet. at 127-30.)[3] Rosewood's Petition was denied by this Court, stating:

> This Court gave third parties with a claimed interest in the forfeited property thirty days from the date of final publication of the forfeiture notice or from receipt of actual notice to file a petition with the Court for an ancillary proceeding. [ ] Notice of the forfeiture was published in the New York Post three times, with the last publication on October 9, 2000. [ ] Therefore, Rosewood's final opportunity to file a petition with this Court expired in November of 2000, at the very latest. Rosewood commenced the current application on January 30, 2009, about 8 years too late. [ ] Thus, Rosewood's petition is several years too late and must be DENIED.

United States v. Kahnawake-Mohawk Indus., Inc., No. 00-CR-0523, 2010 WL 3119186, at *2 (E.D.N.Y. Aug. 3, 2010).

With this background, the Court turns to the facts of Petitioner's prosecution. On September 29, 2004, Petitioner

---

[3] The Bayside Project is referred to as the "Contract" in the Rosewood Petition.

entered a guilty plea to count one of an Information charging Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 371. (See Mutino Information; see also J., D.E. 28.) According to the Information, Petitioner was the president of JPM Contracting Corporation, which was a construction business that "specialized in providing sewer and water main construction for agencies of the State and City of New York." (Mutino Information at 1.) The Information provided a background description of the MBE program:

> In 1980, the United States Department of Transportation ("USDOT") issued regulations in connection with a program to increase the participation of minority and disadvantaged business enterprises [MBEs] in federally-funded public construction contracts (the "[MBE] Program"). Recipients of USDOT construction grants were required to establish a [MBE] program, pursuant to which they would set specific goals for the percentage of work to be awarded to [MBEs], and ensure that good faith efforts were made by general contractors to employ qualified [MBE] subcontractors.

(Mutino Information at 1-2.) Between January 1999 and December 2000, Petitioner, acting with others, conspired to defraud USDOT, NYSDOT and the City of New York by fraudulently using Mohawk as an MBE subcontractor on the Bayside Project; Mohawk did not perform the work; a non-MBE subcontractor did. (See Mutino Information at 4-8.)

Pursuant to his plea agreement, Petitioner entered into a Preliminary Order of Forfeiture, pursuant to which he agreed to

7

pay $100,000.  (See Mutino Order of Forfeiture, D.E. 8.)  Within the Order of Forfeiture, Petitioner

> "agree[d] not to assert any claim or assist any other person to assert any claim to the funds tendered in satisfaction of the Forfeiture Money Judgment . . . in any administrative or judicial proceeding, waive[d] his right to any required notice concerning the forfeiture, waive[d] his right, if any, to trial by jury of the forfeiture allegation, and waive[d] any and all defenses to the forfeiture described in this Order, including, but not limited to, defenses based on double jeopardy, ex post facto application of any applicable statute, any applicable statute of limitations, or the Excessive Fines Clause of the Eighth Amendment."

(See Mutino Order of Forfeiture at 2-3.)  In addition, Mutino entered into a cooperation agreement with the Government, which stated in pertinent part that "[t]he [Petitioner] agrees not to reveal that he was a subject/target of an investigation by [the United States Attorney's Office], or his cooperation, or any information derived therefrom, to any third party without prior consent of this Office."  (Mutino Cooperation Agreement, D.E. 39-2, at ¶ 3(c).)

This Court issued an unsealing order on November 13, 2008 that unsealed Mutino's Information, plea agreement, and plea minutes.  (See Nov. 13, 2008 Order, D.E. 19.)  On November 19, 2008, this Court issued another unsealing order, unsealing the balance of the case.  (See Nov. 19, 2008 Order, D.E. 21.)

Petitioner returned to this Court for sentencing on January 29, 2010, and he was ordered to pay a fine and special assessment and sentenced to three years of probation. (S. Tr., D.E. 34, 9:7-10:19.)

In November of 2011, Petitioner filed a petition in remission or mitigation of forfeiture with the United States Attorney's Office. That petition was denied via letter dated February 28, 2014, stating that it was untimely filed and that Petitioner was not entitled to the funds as he was not an innocent owner. (See D.E. 39-12.) Petitioner did not appeal his conviction or sentence, nor did he file a timely challenge to the Order of Forfeiture.

On October 27, 2014, Petitioner filed the instant Petition for a writ of error coram nobis, arguing that he is entitled to funds forfeited in connection with the Bayside Project. (See Coram Nobis Pet. at 7-10.)[4] The Government filed its response on February 12, 2015, arguing that Petitioner is not entitled to coram nobis relief, as (1) Petitioner did not file a petition in the Mohawk action challenging the relevant forfeiture; (2) the

---

[4] On the same date, Petitioner filed an Amended Petition for a writ of error coram nobis. (See D.E. 36.) Further, Petitioner filed an additional Amended Petition for a writ of error coram nobis with accompanying exhibits on December 29, 2014. (See D.E. 39 and 40.) The Court has reviewed the submissions, finding them to contain the same arguments in the original Petition for a writ of error coram nobis.

9

coram nobis Petition is untimely; and (3) returning the forfeited funds to Petitioner "would not achieve justice." (See Resp't's Br., D.E. 42, at 11-18.) Petitioner replied on April 1, 2015. (See Pet'r's Reply, D.E. 45.)

## DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition

I. Legal Standard

A writ of error coram nobis is authorized by the All Writs Act, 28 U.S.C. § 1651, and is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." Fleming v. United States, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam). Further, "'[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.'" Carlisle v. United States, 517 U.S. 416, 429, 116 S. Ct. 1460, 1467, 134 L. Ed. 2d 613 (1996) (quoting Penn. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43, 106 S. Ct. 355, 361, 88 L. Ed. 2d 189 (1985)). Thus, the writ of coram nobis "is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental

character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotation marks and citation omitted).

When seeking coram nobis relief, the petitioner bears the burden of demonstrating that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Id. at 79 (internal quotation marks and citations omitted). The petitioner bears the burden of proof and "[i]t is presumed [that] the [prior] proceedings were correct." United States v. Morgan, 346 U.S. 502, 512, 74 S. Ct. 247, 253, 98 L. Ed. 248 (1954). The Supreme Court stated that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle, 517 U.S. at 429, 116 S. Ct at 1468 (internal quotation marks and citation omitted; alteration in original).

"It is undisputed that '[b]ecause a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations.'" Foont, 93 F.3d at 79 (quoting Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994)). "A petition for a writ of error coram nobis, however, may still be time barred if

11

the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." Cruz v. People of N.Y., No. 03-CV-9815, 2004 WL 1516787, at *4 (S.D.N.Y. July 6, 2004). Thus, the Court considers timeliness on a case-by-case basis. See Foont, 93 F.3d at 79-80; Cisse v. United States, 330 F. Supp. 2d 336, 344 (S.D.N.Y. 2004).

Though a coram nobis petition is not a petition for habeas corpus relief, "'[b]ecause of the similarities between coram nobis proceedings and § 2255 proceedings, the § 2255 procedure often is applied by analogy in coram nobis cases.'" Fleming, 146 F.3d at 90 n.2 (quoting Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996)).

II. Analysis

Because the Second Circuit has explained that timeliness is "a threshold procedural hurdle to obtaining coram nobis relief," Dixon v. United States, No. 14-CV-0960, 2015 WL 851794, at *6 (S.D.N.Y. Feb. 27, 2015) (citing United States v. Foont, 901 F. Supp. 729, 732-33 (S.D.N.Y. 1995), the Court first addresses whether "sound reasons exist for [Petitioner's] failure to seek appropriate earlier relief." Foont, 93 F.3d at 79 (internal quotation marks and citation omitted). While no specific statute of limitations governs a petition for coram nobis, an "unjustified delay" in filing a petition is still "fatal to an application for coram nobis." Dorfmann v. United States, 13-CV-4999, 2014 WL

260583, at *6 (S.D.N.Y. Jan 23, 2014) (citations omitted). To avoid dismissal of an untimely petition, Petitioner bears the burden of providing a "sound reason for delay." Cruz, 2004 WL 1516787, at *4.

As discussed above, this Petition was filed approximately fourteen years after the Preliminary Order of Forfeiture was served and published. (See generally Coram Nobis Pet.; and D.E. 42-1 at 44-45.) In addition, six years passed between the unsealing of Petitioner's case and the filing of the Petition. Further, four years have passed between Petitioner's sentencing proceedings and the filing of the Petition for coram nobis relief. Petitioner contends that a portion of the delay is the result of the DOJ taking three years to respond to his Petition for Remission and claims that his Cooperation Agreement did not permit him to seek earlier relief. The Court finds that the time spent waiting on a response to his letter Petition for Remission does not justify the additional years of delay. Further, as the Government argues, Petitioner's case was unsealed in 2008. Thus, his cooperation was public at that point. Petitioner does not explain why he waited approximately three years from the unsealing of his case to file his Petition for Remission with the DOJ or six years from unsealing to seek coram nobis relief.

Therefore, the Court finds that Petitioner's assertions fail to provide "sound reasons for his failure to seek appropriate

13

earlier relief." See Cisse, 330 F. Supp. 2d at 344 (coram nobis petition that was filed one year after the expiration of the statute of limitations to file a § 2255 petition deemed untimely); see also Foont, 93 F.3d at 81 (denying as untimely a coram nobis petition that was filed five years after a guilty plea).

As mentioned above, to obtain coram nobis relief, a petitioner must establish that the underlying proceeding was fundamentally flawed, such that that are "circumstances compelling such action to achieve justice." Foont, 93 F.3d at 78-9 (internal quotation marks and citation omitted). Petitioner's claim for relief is not based on an error in his underlying proceeding, as he is not collaterally attacking his guilty plea, probationary sentence, or forfeiture agreement. Rather, Petitioner is attacking the consequences of the Order of Forfeiture in the separate Mohawk matter.

According to 21 U.S.C. § 853(n)(2), an individual who seeks to assert an interest in forfeited funds in a preliminary order of forfeiture "may, within thirty days of the final publication of notice or his receipt of notice . . . whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). Petitioner did not comply with the established limitations period set out by statute to obtain the return of forfeited funds. As it did when Rosewood petitioned for the return

14

of the same funds, the Court again finds that Petitioner failed to properly seek the return of the funds. The Court will not grant the "extraordinary remedy" of coram nobis where Petitioner failed to file a third-party action to return the forfeited funds within the allotted time and where his letter Petition for Remission filed years after the Order of Forfeiture was rejected as meritless and untimely. See Morgan, 346 U.S. at 511, 74 S. Ct. at 252.

The Court turns to whether Petitioner is suffering from continuing legal consequences. Petitioner claims that as JPM had an interest in the funds forfeited in the Mohawk Action and was deprived said funds without a hearing, that he--president of JPM--is suffering continued consequences. (See Pet. at 8-12.) For a petitioner to successfully demonstrate continuing legal consequences, "a petitioner must at least point to 'a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm . . . .. It is not enough to raise purely speculative harms.'" Fleming, 146 F.3d at 91 (quoting United States v. Craig, 907 F.2d 653, 658 (7th Cir. 1990)) (alteration in original). The Second Circuit has emphasized that "[t]he requirement of continuing legal consequences would lose all force if speculative harms . . . were sufficient to state a claim for coram nobis relief." Id. Petitioner's loss of forfeited funds is not merely a speculative harm, but the fact that the funds were forfeited in a separate case complicates the nature of the

15

continued consequences analysis. Ultimately, however, the Court need not reach this question: The Court denies the Petition due to its untimeliness and because Petitioner has not shown that his underlying criminal proceeding was fundamentally flawed, such that there are "circumstances compelling such action to achieve justice." Foont, 93 F.3d at 79 (internal quotation marks and citation omitted).

Accordingly, the Petition is DENIED.

CONCLUSION

For the foregoing reasons, the Petition for a writ of error coram nobis pursuant to 28 U.S.C. § 1651 (D.E. 35) is DENIED and the Amended Petition is DENIED (D.E.36). Because there can be no debate among reasonable jurists that Petitioner was not entitled to coram nobis relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  23 , 2019
       Central Islip, New York

16